# EXHIBIT 2

## (Amended Complaint)

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Aleida Conners, | Court File No. _____ |
| Plaintiff, | Judge _____ |
| vs. | |
| Bank of America, National Association, | *AMENDED* COMPLAINT AND JURY DEMAND |
| Defendant. | |

Plaintiff Aleida Conners, by and through her undersigned counsel, for her Complaint against Defendant, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Aleida Conners is a natural person residing in the County of Hennepin, State of Minnesota.

2.    Defendant Bank of America, National Association, is a Foreign Trust Association registered to do business in Minnesota with a service address, as listed with the Minnesota Secretary of State, of 1000 W Temple Str. CA9-705-05-19, Los Angeles, CA 90012–1514.

3.    Defendant regularly does substantial business in the County of Hennepin, State of Minnesota, and throughout the State of Minnesota.

4.    At all times relevant hereto, Plaintiff was a "consumer" within the meaning of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693a(6).

5.    At all times relevant hereto, Defendant was a "financial institution" as defined by the EFTA, 15 U.S.C. § 1693a(9).

1

6.     The acts alleged in this Complaint fall within the general subject matter of this Court.

7.     The Court has personal jurisdiction over Defendant because Defendant knowingly and willfully conducts substantial business in the State of Minnesota.

## FACTUAL BACKGROUND

8.     Defendant is an international bank worth tens of billions of dollars.

9.     Defendant provides a broad suite of financial services to its membership and customers.

10.    At all times relevant hereto, Plaintiff was a customer of Defendant.

11.    Plaintiff is also a customer of Verizon Wireless ("Verizon"), an international wireless communications company providing a broad range of cellular telephone services to its customers.

12.    Plaintiff owns a cellular telephone purchased from Verizon, and contracts with Verizon for cellular telephone services. Plaintiff has a Verizon provided telephone number.

13.    On or around April 10, 2019, Plaintiff was the victim of a well-known and increasingly prevalent identity theft scam known as "porting" or "port out scamming."

14.    In a port out scam, a scammer finds out a consumer's name and phone number and then attempts to gather as much personal identifiable information ("PII") as possible about the consumer. PII includes name, address, Social Security number, date of birth, and other information that can be used for identity theft.

15.    A port out scam involves scammers learning PII about a cellular phone consumer and using that information to have the consumer's phone number "ported" to another service provider by impersonating the consumer.

2

16.     If a port out scammer has the necessary PII, the scammer can impersonate the consumer by contacting the consumer's mobile service provider and take total control of not only the consumer's phone, but also the consumer's identity.

17.     Once a scammer has ported the consumer's phone number to another service provider, the scammer can tap into other accounts of the consumer's that require codes or a text sent to the consumer's phone number.

18.     After porting the consumer's phone number to another provider, the port scammer can almost immediately access the consumer's bank accounts, credit cards, email services, and more, often by simply by using the stolen phone number to receive text messages with security codes to access bank accounts, email, credit cards, and other sensitive information.

19.     On or around April 10, 2019 Plaintiff was the victim of a port out scam whereby an unknown scammer posing as Plaintiff fraudulently ported Plaintiff's telephone number from Verizon to another carrier, Straight Talk Wireless.

20.     When Plaintiff arrived home from work between 5:30 and 6:30 p.m. and her mobile device connected to Wifi, she began receiving notifications from mobile applications on her device indicating that the account credentials for her online accounts with Defendant (and several of her other accounts) were being changed.

21.     Plaintiff immediately called Defendant's customer service number from her spouse's mobile device at approximately 6:35pm.

22.     During a 19-minute call with Defendant, Plaintiff explained to Defendant that she had received notifications indicating the changes to her online banking account and that the changes were unauthorized.

3

23.     Plaintiff told Defendant she wished to freeze both her Checking and Savings accounts to prevent any unauthorized transfer activity.

24.     At the time of this call, Plaintiff's bank account funds had not yet been stolen and Defendant had the ability and an opportunity to prevent the theft from occurring.

25.     Defendant nevertheless refused to freeze the bank accounts or otherwise take any action to prevent the theft.

26.     Plaintiff was confused, and implored Defendant that it should immediately take action to prevent a scammer from accessing her bank accounts and stealing her funds.

27.     Plaintiff again requested that her bank accounts be frozen and expressed concern that unauthorized transactions would be effected by whomever had fraudulently accessed and made changes to her account credentials.

28.     Defendant responded by explicitly and clearly stating that Plaintiff should not be concerned because she would not be responsible for any fraudulent activity, and that if any money were removed from her bank accounts Defendant would replace the funds.

29.     Relying on Defendants explicit representations, and knowing she had additional parties to immediately contact regarding the fraud in progress, Plaintiff proceeded to call her other financial institutions and visit her local Verizon store to further investigate the issue.

30.     Later on the evening of April 10, 2019, while at the Verizon store, Plaintiff received several e-mails from Defendant indicating further changes being made to her bank accounts and informing her of two unauthorized, fraudulent transfers out of her checking account ending in 3864 in the amounts of $480.00 and $459.00, respectively, and one additional transfer out of her savings account ending in 6800 in the amount of $438.53, leaving the balance of both accounts at $0.00.

4

31.     The total amount stolen from Plaintiff's bank accounts with Defendant was $1,377.53.

32.     Defendant wholly failed to take any action to prevent the scammer from accessing Plaintiff's bank accounts and stealing all of the finds therefrom.

33.     Defendant had prior knowledge of a scam in progress and could have prevented the theft from occurring, but refused to do so and instead allowed the port out scammer to breach Plaintiff's accounts and steal all funds from the accounts.

34.     After receiving notifications of the unauthorized, fraudulent electronic bank transfers, Plaintiff again called Defendant's customer service number and once again reported the fraudulent activity.

35.     This time Defendant froze Plaintiff's accounts and instructed her to call its Fraud Department during regular business hours for instructions on how to recover her lost funds.

36.     On April 11, 2019, Plaintiff reported the porting scam and theft from her bank accounts to the Minneapolis Police Department (the "Police Report").

37.     In early afternoon on April 11, 2019, Plaintiff again called Defendant's Fraud Department and opened claim numbers 11APR2019-381836 and 11APR2019-381802 for the fraudulent, unauthorized electronic fund transfers.

38.     Defendant instructed Plaintiff to fax a communication from Verizon explaining the scam.

39.     Defendant further indicated that all of Plaintiff's funds would be returned and that she would be reimbursed for any third party fees arising from returned autopay transactions entering her account between the time of fraud and the reimbursement.

5

40.     Plaintiff suffered a loss of $16.02 in late payment fees due to a bounced auto pay transaction to Bell Bank on April 15, 2019.

41.     On April 15, 2019, Plaintiff faxed a letter obtained from Verizon's fraud department (the "Verizon Letter") and the Police Report to the fax number provided by Defendant.

42.     Plaintiff received a confirmation of successful transmission of the April 15, 2019 fax to Defendant on April 15, 2019.

43.     The Verizon Letter faxed to Defendant stated that Plaintiff's telephone number "belonging to Verizon wireless customer Aleida Conners has been ported out without her consent to a different service provider. The fraudulent port-out occurred April 10, 2019 at approximately 3:45 p.m. eastern standard time."

44.     The Verizon Letter went on to state "[w]e have received a police report pertaining to the theft and are currently working with our carrier service partners to retrieve the number. While we have taken precautions to further secure the customers account we also advised that the customer re-secure any and all other sensitive accounts."

45.     The Verizon Letter provided a phone number for Defendant to call and discuss any questions Defendant may have about the port out scam.

46.     The Police Report faxed to Defendant described the fraudulent port out scam and provided various details of the scam and the fraudulent, unauthorized electronic fund transfers made by the scammer from Plaintiff's bank accounts with Defendant.

47.     On April 26, 2019, Plaintiff contacted Defendant to find out the status of her claims.

6

48.     Defendant informed Plaintiff that her claims had been denied and Defendant was refusing to reimburse Plaintiff's funds stolen through fraudulent, unauthorized electronic fund transfers.

49.     The reason Defendant proffered for denying Plaintiff's claims was "because the Verizon Letter was not on Verizon letterhead."

50.     Defendant agreed that the Verizon Letter contained all of the substantive information needed by Defendant to investigate the claim, including contact information for the responsible Verizon department, and that it came from a Verizon-owned domain.

51.     Defendant represented to Plaintiff that the claim would be escalated for reconsideration based on those facts.

52.     On May 20, 2019, Plaintiff called Defendant once again to inquire on the status of her claims.

53.     Plaintiff spoke with Layla, whose identification number with Defendant is BXJVL.

54.     During Plaintiff's May 20, 2019 call with Defendant, Defendant shifted its reason for denying Plaintiff's claim.

55.     The new reason Defendant proffered to Plaintiff was that her claims were being denied because Plaintiff had "not provided proof of 'malware' on her computer."

56.     Plaintiff explained that there had been no "malware" and that she was the victim of a port out/identity theft scam.

57.     "Malware" has nothing to do with Plaintiff's claims.

7

58. The different, shifting reasons Defendant provided for denying Plaintiff's claims were a pretext to engage in the unlawful intentional refusal to recredit the funds stolen from Plaintiff's bank accounts without a good faith investigation or a reasonable basis for the denial.

59. In the May 20, 2019 call, Plaintiff explained to Defendant that Verizon could further explain the technical details of the port out scam if Defendant called Verizon's contact number previously provided to Defendant in the Verizon Letter.

60. Defendant then agreed that "malware" was not actually at issue, Defendant had no basis to claim "malware" was at issue, and proof of "malware" was not necessary for Plaintiff's claims.

61. Nevertheless, as of June 7, 2019, Defendant had not recredited Plaintiff's account or reversed the denial of her fraud claim.

62. On June 7, 2019, Plaintiff visited Defendant's branch location at 80 S 8th St STE 266, Minneapolis, MN 55402 and met with Walter Choy ("Choy") about the status of her claim.

63. Choy represented to Plaintiff that her claims had been denied, and continued to be denied, because she had not provided "proof of malware" and the Verizon Letter was "not on letterhead."

64. On June 18, 2019, Plaintiff received two letters from Defendant regarding Plaintiff's claims.

65. In Defendant's letters to Plaintiff, Defendant once again shifted its reason for denying Plaintiff's claims.

66. The letters alleged that Defendant was refusing to honor Plaintiff's claims because Plaintiff "gave [her] Online ID or Passcode to a person or entity [and] ... authorized that person or entity to perform a transaction on [Plaintiff's] behalf."

8

63.67.  The reason Defendant provided in its June 18 letters to Plaintiff is patently false. If Defendant had actually investigated Plaintiff's claims, Defendant could not have reached this conclusion.

64.68.  Defendant failed to prevent unauthorized, fraudulent electronic fund transfers from Plaintiff's account despite knowledge and prior notification of a scam in progress.

65.69.  Defendant failed to prevent an unauthorized third-party scammer from accessing Plaintiff's bank accounts and stealing the money therefrom.

66.70.  Defendant has intentionally refused to recredit Plaintiff's accounts after receiving notice and evidence of unauthorized electronic fund transfers.

67.71.  Defendant failed to make a good faith investigation of the unauthorized electronic fund transfers.

68.72.  Defendant did not have a reasonable basis for denying Plaintiff's claims or believing that Plaintiff's account was not subject to unauthorized electronic fund transfers.

69.73.  Defendant knowingly and willfully concluded that Plaintiff's accounts were not subject to unauthorized electronic fund transfers when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation or lack thereof.

70.74.  As a result of Defendant's acts and/or omissions Plaintiff has suffered and continues to suffer emotional distress, embarrassment, shame, and disappointment.

71.75.  As a result of Defendant's acts and/or omissions, Plaintiff has suffered lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

**COUNT I**
**Violations of the Electronic Fund Transfer Act**
**15 U.S.C. § 1693 *et seq.***

72.76.  Plaintiff realleges each and every paragraph of this Complaint.

73.77.  Plaintiff is a "consumer" within the meaning of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693a(6).

74.78.  Defendant is a "financial institution" as defined by the EFTA, 15 U.S.C. § 1693a(9).

75.79.  Defendant received oral and/or written notice of errors/unauthorized electronic fund transfers from Plaintiff's bank accounts within the meaning of 15 U.S.C. § 1693a and 1693f.

76.80.  The EFTA places an affirmative obligation on Defendant to investigate the alleged errors/unauthorized electronic fund transfers, determine whether errors have occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. *See* 15 U.S.C. § 1693f(a)(3).

77.81.  Defendant failed to investigate in good faith Plaintiff's alleged errors/unauthorized electronic fund transfers as required under the EFTA. Defendant is therefore in violation of the EFTA.

78.82.  The EFTA also places an affirmative obligation on Defendant to provisionally recredit Plaintiff's bank accounts for the amount of the errors/unauthorized electronic fund transfers within 10 days after Plaintiff provided notice of the errors/unauthorized electronic fund transfers. *See* 15 U.S.C. § 1693f(a), 1693f(c).

79.83.  Defendant failed to provisionally recredit Plaintiff's bank accounts for the amount of the errors/unauthorized electronic fund transfers within 10 days after Plaintiff provided notice

10

of the errors/unauthorized electronic fund transfers. Defendant is therefore in violation of the

EFTA.

80.84. After receiving notice from Plaintiff of the errors/unauthorized electronic fund

transfers, Defendant determined that no errors/unauthorized electronic fund transfers occurred.

81.85. Defendant did not conduct a good faith investigation before making a

determination that no errors occurred, in violation of the EFTA.

82.86. Defendant's stated reasons for determining no errors/unauthorized electronic fund

transfers occurred are not credible and are pretext for engaging in the unlawful activities

described herein.

83.87. Defendant did not provisionally recredit Plaintiff's account within 10 days after

receiving notice of errors/unauthorized electronic fund transfers, and Defendant (A) did not

make a good faith investigation of the alleged errors, or (B) did not have a reasonable basis for

believing that Plaintiff's account was not in error. Defendant is therefore in violation of the

EFTA. *See* 15 U.S.C. § 1693f(e)(1)

84.88. Defendant knowingly and willfully concluded that Plaintiff's accounts were not in

error when such conclusion could not reasonably have been drawn from the evidence available to

Defendant at the time of its investigation (or failure to investigate). Defendant is therefore in

violation of the EFTA. *See* 15 U.S.C. § 1693f(e)(2).

85.89. Defendant knowingly and willfully failed to prevent the fraudulent, unauthorized

electronic transfers described herein despite being given the clear opportunity to do so, and failed

to recredit Plaintiff's accounts after a scammer fraudulently transferred Plaintiff's funds out of

her accounts.

11

86.90. Defendant has unlawfully placed liability on Plaintiff for unauthorized electronic fund transfers from Plaintiff's bank accounts in violation of the EFTA. *See* 15 U.S.C. § 1693g(a)–(d).

87.91. Any and all conditions precedent to the relief Plaintiff seeks herein have either occurred, been performed, or been waived by Defendant.

88.92. Defendant is liable to Plaintiff for actual damages, as well as a penalty payable to Plaintiff of not less than $100, but not more than $1000, per violation, for each and every violation of the EFTA. 15 U.S.C. § 1693m(a).

89.93. Defendant is also liable to Plaintiff for the costs of this action, together with reasonable attorney's fees. 15 U.S.C. § 1693m(a).

90.94. Plaintiff is also entitled to treble damages under the EFTA pursuant to 15 U.S.C. § 1693f(e) and 15 U.S.C. § 1693m(a).

91.95. Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

### COUNT II
**Violations of the Minnesota**
**Uniform Deceptive Trade Practices Act**

92.96. Plaintiff realleges each and every paragraph of this Complaint.

93.97. The Minnesota Uniform Deceptive Trade Practices Act prohibits a variety of deceptive trade practices by entities doing business in Minnesota. *See generally* Minn. Stat. § 325D.43 et seq. Deceptive trade practices include, but are not limited to:

12

a. "caus[ing] likelihood of confusion or of misunderstanding as to the … approval
… of goods or services";

b. "represent[ing] that goods or services have … characteristics, ingredients, uses,
benefits … they do not";

c. "represent[ing] that goods or services are of a particular standard, quality, or
grade … if they are of another";

d. "engag[ing] in any other conduct which similarly creates a likelihood of
confusion or of misunderstanding."

*See* Minn. Stat. § 325D.44.

94. 98.  Defendant's material misrepresentations and omissions described herein,
including, but not limited to representing to Plaintiff that Plaintiff's bank accounts were
protected from fraudulent, unauthorized transfers, and that Defendant would recredit any
unauthorized transfer of funds, constitutes deceptive conduct that violates Minn. Stat. § 325D.44.
Defendant failed to prevent the fraudulent, unauthorized electronic transfers described herein
despite being given the clear opportunity to do so, and failed to recredit Plaintiff's accounts after
a scammer fraudulently transferred Plaintiff's funds out of her accounts.

95. 99.  Defendant's actions and failures to act described herein, including, but not limited
to, (a) failing to investigate in good faith unauthorized electronic fund transfers; (b) refusing to
recredit Plaintiff's bank accounts without a reasonable basis for believing that Plaintiff's account
was not in error; (c) knowingly and willfully concluding that Plaintiff's accounts were not in
error when such conclusion could not reasonably have been drawn from the evidence available to
Defendant; and (d) failing to take reasonable action to prevent an unauthorized scammer from

13

accessing Plaintiff's bank accounts, constitutes deceptive conduct that violates Minn. Stat. § 325D.44

96.100.　　　Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

97.101.　　　Plaintiff is entitled to relief under Minnesota Statutes § 325D.45, including, but not limited to, actual damages, injunctive relief, attorneys' fees and costs, and cumulative relief.

### COUNT III
**Conversion**

98.102.　　　Plaintiff realleges each and every paragraph of this Complaint.

99.103.　　　Plaintiff had title and right to use, possess, and own the funds Plaintiff deposited into her bank accounts with Defendant.

100.104.　　　By refusing to recredit the money stolen from Plaintiff pursuant to a fraudulent, unauthorized electronic fund transfer, Defendant willfully interfered with and wrongfully deprived Plaintiff of her funds.

101.105.　　　Defendant's willful interference with Plaintiff's funds was without justification and inconsistent with the rights of Plaintiff to use, possess, and own the funds.

102.106.　　　Defendant continues to exercise control over funds belonging to Plaintiff and has refused to surrender possession of the funds that Plaintiff has a right to demand, with intent to permanently deprive Plaintiff of the funds.

103.107.　　　Defendant is therefore liable to Plaintiff as a converter of the funds.

14

104.108.    Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

### COUNT IV
#### Promissory Estoppel

105.109.    Plaintiff realleges each and every paragraph of this Complaint.

106.110.    Defendant made a promise to Plaintiff to that Defendant would recredit any funds taken from Plaintiff's bank accounts without authorization.

107.111.    Defendant's promise was clear and definite.

108.112.    In making the promise to Plaintiff, Defendant should have reasonably expected to induce action or forbearance on the part of Plaintiff.

109.113.    Defendant's promise induced Plaintiff into action or forbearance.

110.114.    Defendant subsequently breached its promise.

111.115.    Injustice can be avoided only by enforcement of Defendant's promise.

112.116.    Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

### COUNT V
#### Negligent Misrepresentation

113.117.    Plaintiff realleges each and every paragraph of this Complaint.

114.118.    Defendant had a duty to Plaintiff to take reasonable care and competence in conveying information about Defendant's handling of Plaintiff's requests to prevent

15

fraudulent activity and address claims of fraudulent transfers from Plaintiff's bank accounts with Defendant.

115.119.    Defendant breached its duty to Plaintiff by providing false and/or inaccurate information and representing Defendant would recredit any unauthorized transfer of funds from Plaintiff's bank accounts with Defendant.

116.120.    Defendant provided false and/or inaccurate information to Plaintiff with the knowledge and intent that Plaintiff rely on the information.

117.121.    Plaintiff reasonably relied on, and acted or omitted action on, the information provided by Defendant.

118.    Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

**Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Tab after: 0.5" + Indent at: 0"

**COUNT VI**
**Unjust Enrichment**

119.122.    Plaintiff realleges each and every paragraph of this Complaint.

120.123.    Defendant knowingly received value and benefits from Plaintiff to which Defendant was not entitled.

121.124.    Defendants' retention of the unauthorized funds electronically transferred from Plaintiff's bank accounts and other benefits constitute unjust enrichment, and Plaintiff is entitled to judgment against Defendant in the form of restitution, disgorgement, monetary damages, and other remedies as the court deems just and equitable.

16

~~122.~~ 125.      Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant for the following:

    a.  Declaring that Defendant's acts and/or omissions described in this Complaint constitute violations of the Electronic Fund Transfer Act;

    b.  Declaring that Defendant's acts and/or omissions described in this Complaint constitute violations of the Minnesota Uniform Deceptive Trade Practices Act;

    c.  Enjoining Defendant's ongoing unlawful conduct described herein;

    d.  That Defendant be required to make Plaintiff whole for its unlawful actions/omissions;

    e.  That the Court award Plaintiff her damages, including lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages;

    f.  That the Court award Plaintiff treble damages pursuant to the Electronic Fund Transfer Act;

    g.  That the Court award Plaintiff penalties for each of Defendant's violations of the Electronic Funds Transfer Act in the amount of not less than $100 and not more than $1000 per violation, pursuant to the Electronic Funds Transfer Act;

    h.  That the Court award damages and cumulative remedies pursuant to the Minnesota Deceptive Trade Practices Act;

    i.  That the Court award Plaintiff her attorney's fees and costs;

17

j.  That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated this 18~~0~~th day of June, 2019

**LELAND CONNERS PLC**

Ryan T. Conners
Ryan T. Conners, #395313
2050 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 339-1515
Fax: (612) 677-3323
Email: ryan@lelandconners.com

**Attorney for Plaintiff**

**ACKNOWLEDGMENT**

The undersigned hereby acknowledges that costs, disbursements and reasonable attorneys' and witness fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

/s/ Ryan T. Conners
Ryan T. Conners, MN#395313

18

**STATE OF MINNESOTA**                                   **DISTRICT COURT**

**COUNTY OF HENNEPIN**                          **FOURTH JUDICIAL DISTRICT**

---

Aleida Conners,                                     Court File No. _____

                          Plaintiff,                    Judge _____

          vs.

                                                         ***AMENDED* COMPLAINT**
Bank of America, National Association,                **AND JURY DEMAND**

                          Defendant.

---

Plaintiff Aleida Conners, by and through her undersigned counsel, for her Complaint

against Defendant, states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Aleida Conners is a natural person residing in the County of Hennepin,

State of Minnesota.

2.     Defendant Bank of America, National Association, is a Foreign Trust Association

registered to do business in Minnesota with a service address, as listed with the Minnesota

Secretary of State, of 1000 W Temple Str. CA9-705-05-19, Los Angeles, CA 90012–1514.

3.     Defendant regularly does substantial business in the County of Hennepin, State of

Minnesota, and throughout the State of Minnesota.

4.     At all times relevant hereto, Plaintiff was a "consumer" within the meaning of the

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693a(6).

5.     At all times relevant hereto, Defendant was a "financial institution" as defined by

the EFTA, 15 U.S.C. § 1693a(9).

1

6.    The acts alleged in this Complaint fall within the general subject matter of this Court.

7.    The Court has personal jurisdiction over Defendant because Defendant knowingly and willfully conducts substantial business in the State of Minnesota.

## FACTUAL BACKGROUND

8.    Defendant is an international bank worth tens of billions of dollars.

9.    Defendant provides a broad suite of financial services to its membership and customers.

10.    At all times relevant hereto, Plaintiff was a customer of Defendant.

11.    Plaintiff is also a customer of Verizon Wireless ("Verizon"), an international wireless communications company providing a broad range of cellular telephone services to its customers.

12.    Plaintiff owns a cellular telephone purchased from Verizon, and contracts with Verizon for cellular telephone services. Plaintiff has a Verizon provided telephone number.

13.    On or around April 10, 2019, Plaintiff was the victim of a well-known and increasingly prevalent identity theft scam known as "porting" or "port out scamming."

14.    In a port out scam, a scammer finds out a consumer's name and phone number and then attempts to gather as much personal identifiable information ("PII") as possible about the consumer. PII includes name, address, Social Security number, date of birth, and other information that can be used for identity theft.

15.    A port out scam involves scammers learning PII about a cellular phone consumer and using that information to have the consumer's phone number "ported" to another service provider by impersonating the consumer.

2

16.    If a port out scammer has the necessary PII, the scammer can impersonate the consumer by contacting the consumer's mobile service provider and take total control of not only the consumer's phone, but also the consumer's identity.

17.    Once a scammer has ported the consumer's phone number to another service provider, the scammer can tap into other accounts of the consumer's that require codes or a text sent to the consumer's phone number.

18.    After porting the consumer's phone number to another provider, the port scammer can almost immediately access the consumer's bank accounts, credit cards, email services, and more, often by simply by using the stolen phone number to receive text messages with security codes to access bank accounts, email, credit cards, and other sensitive information.

19.    On or around April 10, 2019 Plaintiff was the victim of a port out scam whereby an unknown scammer posing as Plaintiff fraudulently ported Plaintiff's telephone number from Verizon to another carrier, Straight Talk Wireless.

20.    When Plaintiff arrived home from work between 5:30 and 6:30 p.m. and her mobile device connected to Wifi, she began receiving notifications from mobile applications on her device indicating that the account credentials for her online accounts with Defendant (and several of her other accounts) were being changed.

21.    Plaintiff immediately called Defendant's customer service number from her spouse's mobile device at approximately 6:35pm.

22.    During a 19-minute call with Defendant, Plaintiff explained to Defendant that she had received notifications indicating the changes to her online banking account and that the changes were unauthorized.

3

23.     Plaintiff told Defendant she wished to freeze both her Checking and Savings accounts to prevent any unauthorized transfer activity.

24.     At the time of this call, Plaintiff's bank account funds had not yet been stolen and Defendant had the ability and an opportunity to prevent the theft from occurring.

25.     Defendant nevertheless refused to freeze the bank accounts or otherwise take any action to prevent the theft.

26.     Plaintiff was confused, and implored Defendant that it should immediately take action to prevent a scammer from accessing her bank accounts and stealing her funds.

27.     Plaintiff again requested that her bank accounts be frozen and expressed concern that unauthorized transactions would be effected by whomever had fraudulently accessed and made changes to her account credentials.

28.     Defendant responded by explicitly and clearly stating that Plaintiff should not be concerned because she would not be responsible for any fraudulent activity, and that if any money were removed from her bank accounts Defendant would replace the funds.

29.     Relying on Defendants explicit representations, and knowing she had additional parties to immediately contact regarding the fraud in progress, Plaintiff proceeded to call her other financial institutions and visit her local Verizon store to further investigate the issue.

30.     Later on the evening of April 10, 2019, while at the Verizon store, Plaintiff received several e-mails from Defendant indicating further changes being made to her bank accounts and informing her of two unauthorized, fraudulent transfers out of her checking account ending in 3864 in the amounts of $480.00 and $459.00, respectively, and one additional transfer out of her savings account ending in 6800 in the amount of $438.53, leaving the balance of both accounts at $0.00.

4

31.     The total amount stolen from Plaintiff's bank accounts with Defendant was
$1,377.53.

32.     Defendant wholly failed to take any action to prevent the scammer from accessing
Plaintiff's bank accounts and stealing all of the finds therefrom.

33.     Defendant had prior knowledge of a scam in progress and could have prevented
the theft from occurring, but refused to do so and instead allowed the port out scammer to breach
Plaintiff's accounts and steal all funds from the accounts.

34.     After receiving notifications of the unauthorized, fraudulent electronic bank
transfers, Plaintiff again called Defendant's customer service number and once again reported
the fraudulent activity.

35.     This time Defendant froze Plaintiff's accounts and instructed her to call its Fraud
Department during regular business hours for instructions on how to recover her lost funds.

36.     On April 11, 2019, Plaintiff reported the porting scam and theft from her bank
accounts to the Minneapolis Police Department (the "Police Report").

37.     In early afternoon on April 11, 2019, Plaintiff again called Defendant's Fraud
Department and opened claim numbers 11APR2019-381836 and 11APR2019-381802 for the
fraudulent, unauthorized electronic fund transfers.

38.     Defendant instructed Plaintiff to fax a communication from Verizon explaining
the scam.

39.     Defendant further indicated that all of Plaintiff's funds would be returned and that
she would be reimbursed for any third party fees arising from returned autopay transactions
entering her account between the time of fraud and the reimbursement.

40.     Plaintiff suffered a loss of $16.02 in late payment fees due to a bounced auto pay transaction to Bell Bank on April 15, 2019.

41.     On April 15, 2019, Plaintiff faxed a letter obtained from Verizon's fraud department (the "Verizon Letter") and the Police Report to the fax number provided by Defendant.

42.     Plaintiff received a confirmation of successful transmission of the April 15, 2019 fax to Defendant on April 15, 2019.

43.     The Verizon Letter faxed to Defendant stated that Plaintiff's telephone number "belonging to Verizon wireless customer Aleida Conners has been ported out without her consent to a different service provider. The fraudulent port-out occurred April 10, 2019 at approximately 3:45 p.m. eastern standard time."

44.     The Verizon Letter went on to state "[w]e have received a police report pertaining to the theft and are currently working with our carrier service partners to retrieve the number. While we have taken precautions to further secure the customers account we also advised that the customer re-secure any and all other sensitive accounts."

45.     The Verizon Letter provided a phone number for Defendant to call and discuss any questions Defendant may have about the port out scam.

46.     The Police Report faxed to Defendant described the fraudulent port out scam and provided various details of the scam and the fraudulent, unauthorized electronic fund transfers made by the scammer from Plaintiff's bank accounts with Defendant.

47.     On April 26, 2019, Plaintiff contacted Defendant to find out the status of her claims.

6

48.     Defendant informed Plaintiff that her claims had been denied and Defendant was refusing to reimburse Plaintiff's funds stolen through fraudulent, unauthorized electronic fund transfers.

49.     The reason Defendant proffered for denying Plaintiff's claims was "because the Verizon Letter was not on Verizon letterhead."

50.     Defendant agreed that the Verizon Letter contained all of the substantive information needed by Defendant to investigate the claim, including contact information for the responsible Verizon department, and that it came from a Verizon-owned domain.

51.     Defendant represented to Plaintiff that the claim would be escalated for reconsideration based on those facts.

52.     On May 20, 2019, Plaintiff called Defendant once again to inquire on the status of her claims.

53.     Plaintiff spoke with Layla, whose identification number with Defendant is BXJVL.

54.     During Plaintiff's May 20, 2019 call with Defendant, Defendant shifted its reason for denying Plaintiff's claim.

55.     The new reason Defendant proffered to Plaintiff was that her claims were being denied because Plaintiff had "not provided proof of 'malware' on her computer."

56.     Plaintiff explained that there had been no "malware" and that she was the victim of a port out/identity theft scam.

57.     "Malware" has nothing to do with Plaintiff's claims.

58.     The different, shifting reasons Defendant provided for denying Plaintiff's claims were a pretext to engage in the unlawful intentional refusal to recredit the funds stolen from Plaintiff's bank accounts without a good faith investigation or a reasonable basis for the denial.

59.     In the May 20, 2019 call, Plaintiff explained to Defendant that Verizon could further explain the technical details of the port out scam if Defendant called Verizon's contact number previously provided to Defendant in the Verizon Letter.

60.     Defendant then agreed that "malware" was not actually at issue, Defendant had no basis to claim "malware" was at issue, and proof of "malware" was not necessary for Plaintiff's claims.

61.     Nevertheless, as of June 7, 2019, Defendant had not recredited Plaintiff's account or reversed the denial of her fraud claim.

62.     On June 7, 2019, Plaintiff visited Defendant's branch location at 80 S 8th St STE 266, Minneapolis, MN 55402 and met with Walter Choy ("Choy") about the status of her claim.

63.     Choy represented to Plaintiff that her claims had been denied, and continued to be denied, because she had not provided "proof of malware" and the Verizon Letter was "not on letterhead."

64.     On June 18, 2019, Plaintiff received two letters from Defendant regarding Plaintiff's claims.

65.     In Defendant's letters to Plaintiff, Defendant once again shifted its reason for denying Plaintiff's claims.

66.     The letters alleged that Defendant was refusing to honor Plaintiff's claims because Plaintiff "gave [her] Online ID or Passcode to a person or entity [and] … authorized that person or entity to perform a transaction on [Plaintiff's] behalf."

8

67.     The reason Defendant provided in its June 18 letters to Plaintiff is patently false. If Defendant had actually investigated Plaintiff's claims, Defendant could not have reached this conclusion.

68.     Defendant failed to prevent unauthorized, fraudulent electronic fund transfers from Plaintiff's account despite knowledge and prior notification of a scam in progress.

69.     Defendant failed to prevent an unauthorized third-party scammer from accessing Plaintiff's bank accounts and stealing the money therefrom.

70.     Defendant has intentionally refused to recredit Plaintiff's accounts after receiving notice and evidence of unauthorized electronic fund transfers.

71.     Defendant failed to make a good faith investigation of the unauthorized electronic fund transfers.

72.     Defendant did not have a reasonable basis for denying Plaintiff's claims or believing that Plaintiff's account was not subject to unauthorized electronic fund transfers.

73.     Defendant knowingly and willfully concluded that Plaintiff's accounts were not subject to unauthorized electronic fund transfers when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation or lack thereof.

74.     As a result of Defendant's acts and/or omissions Plaintiff has suffered and continues to suffer emotional distress, embarrassment, shame, and disappointment.

75.     As a result of Defendant's acts and/or omissions, Plaintiff has suffered lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

## COUNT I
### Violations of the Electronic Fund Transfer Act
### 15 U.S.C. § 1693 *et seq.*

76.    Plaintiff realleges each and every paragraph of this Complaint.

77.    Plaintiff is a "consumer" within the meaning of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693a(6).

78.    Defendant is a "financial institution" as defined by the EFTA, 15 U.S.C. § 1693a(9).

79.    Defendant received oral and/or written notice of errors/unauthorized electronic fund transfers from Plaintiff's bank accounts within the meaning of 15 U.S.C. § 1693a and 1693f.

80.    The EFTA places an affirmative obligation on Defendant to investigate the alleged errors/unauthorized electronic fund transfers, determine whether errors have occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. *See* 15 U.S.C. § 1693f(a)(3).

81.    Defendant failed to investigate in good faith Plaintiff's alleged errors/unauthorized electronic fund transfers as required under the EFTA. Defendant is therefore in violation of the EFTA.

82.    The EFTA also places an affirmative obligation on Defendant to provisionally recredit Plaintiff's bank accounts for the amount of the errors/unauthorized electronic fund transfers within 10 days after Plaintiff provided notice of the errors/unauthorized electronic fund transfers. *See* 15 U.S.C. § 1693f(a), 1693f(c).

83.    Defendant failed to provisionally recredit Plaintiff's bank accounts for the amount of the errors/unauthorized electronic fund transfers within 10 days after Plaintiff provided notice

10

of the errors/unauthorized electronic fund transfers. Defendant is therefore in violation of the EFTA.

84.     After receiving notice from Plaintiff of the errors/unauthorized electronic fund transfers, Defendant determined that no errors/unauthorized electronic fund transfers occurred.

85.     Defendant did not conduct a good faith investigation before making a determination that no errors occurred, in violation of the EFTA.

86.     Defendant's stated reasons for determining no errors/unauthorized electronic fund transfers occurred are not credible and are pretext for engaging in the unlawful activities described herein.

87.     Defendant did not provisionally recredit Plaintiff's account within 10 days after receiving notice of errors/unauthorized electronic fund transfers, and Defendant (A) did not make a good faith investigation of the alleged errors, or (B) did not have a reasonable basis for believing that Plaintiff's account was not in error. Defendant is therefore in violation of the EFTA. *See* 15 U.S.C. § 1693f(e)(1)

88.     Defendant knowingly and willfully concluded that Plaintiff's accounts were not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation (or failure to investigate). Defendant is therefore in violation of the EFTA. *See* 15 U.S.C. § 1693f(e)(2).

89.     Defendant knowingly and willfully failed to prevent the fraudulent, unauthorized electronic transfers described herein despite being given the clear opportunity to do so, and failed to recredit Plaintiff's accounts after a scammer fraudulently transferred Plaintiff's funds out of her accounts.

11

90.     Defendant has unlawfully placed liability on Plaintiff for unauthorized electronic fund transfers from Plaintiff's bank accounts in violation of the EFTA. *See* 15 U.S.C. § 1693g(a)–(d).

91.     Any and all conditions precedent to the relief Plaintiff seeks herein have either occurred, been performed, or been waived by Defendant.

92.     Defendant is liable to Plaintiff for actual damages, as well as a penalty payable to Plaintiff of not less than $100, but not more than $1000, per violation, for each and every violation of the EFTA. 15 U.S.C. § 1693m(a).

93.     Defendant is also liable to Plaintiff for the costs of this action, together with reasonable attorney's fees. 15 U.S.C. § 1693m(a).

94.     Plaintiff is also entitled to treble damages under the EFTA pursuant to 15 U.S.C. § 1693f(e) and 15 U.S.C. § 1693m(a).

95.     Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

## COUNT II
### Violations of the Minnesota
### Uniform Deceptive Trade Practices Act

96.     Plaintiff realleges each and every paragraph of this Complaint.

97.     The Minnesota Uniform Deceptive Trade Practices Act prohibits a variety of deceptive trade practices by entities doing business in Minnesota. *See generally* Minn. Stat. § 325D.43 et seq. Deceptive trade practices include, but are not limited to:

12

a. "caus[ing] likelihood of confusion or of misunderstanding as to the ... approval ... of goods or services";

b. "represent[ing] that goods or services have ... characteristics, ingredients, uses, benefits ... they do not";

c. "represent[ing] that goods or services are of a particular standard, quality, or grade ... if they are of another";

d. "engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

*See* Minn. Stat. § 325D.44.

98. Defendant's material misrepresentations and omissions described herein, including, but not limited to representing to Plaintiff that Plaintiff's bank accounts were protected from fraudulent, unauthorized transfers, and that Defendant would recredit any unauthorized transfer of funds, constitutes deceptive conduct that violates Minn. Stat. § 325D.44. Defendant failed to prevent the fraudulent, unauthorized electronic transfers described herein despite being given the clear opportunity to do so, and failed to recredit Plaintiff's accounts after a scammer fraudulently transferred Plaintiff's funds out of her accounts.

99. Defendant's actions and failures to act described herein, including, but not limited to, (a) failing to investigate in good faith unauthorized electronic fund transfers; (b) refusing to recredit Plaintiff's bank accounts without a reasonable basis for believing that Plaintiff's account was not in error; (c) knowingly and willfully concluding that Plaintiff's accounts were not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant; and (d) failing to take reasonable action to prevent an unauthorized scammer from

accessing Plaintiff's bank accounts, constitutes deceptive conduct that violates Minn. Stat. § 325D.44

100.    Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

101.    Plaintiff is entitled to relief under Minnesota Statutes § 325D.45, including, but not limited to, actual damages, injunctive relief, attorneys' fees and costs, and cumulative relief.

## COUNT III
### Conversion

102.    Plaintiff realleges each and every paragraph of this Complaint.

103.    Plaintiff had title and right to use, possess, and own the funds Plaintiff deposited into her bank accounts with Defendant.

104.    By refusing to recredit the money stolen from Plaintiff pursuant to a fraudulent, unauthorized electronic fund transfer, Defendant willfully interfered with and wrongfully deprived Plaintiff of her funds.

105.    Defendant's willful interference with Plaintiff's funds was without justification and inconsistent with the rights of Plaintiff to use, possess, and own the funds.

106.    Defendant continues to exercise control over funds belonging to Plaintiff and has refused to surrender possession of the funds that Plaintiff has a right to demand, with intent to permanently deprive Plaintiff of the funds.

107.    Defendant is therefore liable to Plaintiff as a converter of the funds.

108.    Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties

14

and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

## COUNT IV
### Promissory Estoppel

109.   Plaintiff realleges each and every paragraph of this Complaint.

110.   Defendant made a promise to Plaintiff to that Defendant would recredit any funds taken from Plaintiff's bank accounts without authorization.

111.   Defendant's promise was clear and definite.

112.   In making the promise to Plaintiff, Defendant should have reasonably expected to induce action or forbearance on the part of Plaintiff.

113.   Defendant's promise induced Plaintiff into action or forbearance.

114.   Defendant subsequently breached its promise.

115.   Injustice can be avoided only by enforcement of Defendant's promise.

116.   Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

## COUNT V
### Negligent Misrepresentation

117.   Plaintiff realleges each and every paragraph of this Complaint.

118.   Defendant had a duty to Plaintiff to take reasonable care and competence in conveying information about Defendant's handling of Plaintiff's requests to prevent fraudulent activity and address claims of fraudulent transfers from Plaintiff's bank accounts with Defendant.

15

119.    Defendant breached its duty to Plaintiff by providing false and/or inaccurate information and representing Defendant would recredit any unauthorized transfer of funds from Plaintiff's bank accounts with Defendant.

120.    Defendant provided false and/or inaccurate information to Plaintiff with the knowledge and intent that Plaintiff rely on the information.

121.    Plaintiff reasonably relied on, and acted or omitted action on, the information provided by Defendant.

Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

### COUNT VI
**Unjust Enrichment**

122.    Plaintiff realleges each and every paragraph of this Complaint.

123.    Defendant knowingly received value and benefits from Plaintiff to which Defendant was not entitled.

124.    Defendants' retention of the unauthorized funds electronically transferred from Plaintiff's bank accounts and other benefits constitute unjust enrichment, and Plaintiff is entitled to judgment against Defendant in the form of restitution, disgorgement, monetary damages, and other remedies as the court deems just and equitable.

125.    Due to Defendant's violations, actions, and/or omissions, Plaintiff suffered actual damages in the form of lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages.

**WHEREFORE,** Plaintiff requests that judgment be entered against Defendant for the following:

a. Declaring that Defendant's acts and/or omissions described in this Complaint constitute violations of the Electronic Fund Transfer Act;

b. Declaring that Defendant's acts and/or omissions described in this Complaint constitute violations of the Minnesota Uniform Deceptive Trade Practices Act;

c. Enjoining Defendant's ongoing unlawful conduct described herein;

d. That Defendant be required to make Plaintiff whole for its unlawful actions/omissions;

e. That the Court award Plaintiff her damages, including lost wages and benefits, lost bank account funds, unnecessary penalties and interest payments, humiliation, emotional distress, attorney's fees and costs, and other serious damages;

f. That the Court award Plaintiff treble damages pursuant to the Electronic Fund Transfer Act;

g. That the Court award Plaintiff penalties for each of Defendant's violations of the Electronic Funds Transfer Act in the amount of not less than $100 and not more than $1000 per violation, pursuant to the Electronic Funds Transfer Act;

h. That the Court award damages and cumulative remedies pursuant to the Minnesota Deceptive Trade Practices Act;

i. That the Court award Plaintiff her attorney's fees and costs;

j. That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated this 18th day of June, 2019

**LELAND CONNERS PLC**

Ryan T. Conners
Ryan T. Conners, #395313
2050 Canadian Pacific Plaza
120 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 339-1515
Fax: (612) 677-3323
Email: ryan@lelandconners.com

**Attorney for Plaintiff**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorneys' and witness fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

/s/ Ryan T. Conners
Ryan T. Conners, MN#395313